UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

BRYAIN YOUNG,                )
                             )
            Plaintiff,       )
                             )
v.                           )        17-1269
                             )
MELVIN, *et al.*             )
                             )
            Defendants.      )

## MERIT REVIEW ORDER

Plaintiff, proceeding pro se and presently incarcerated at Pontiac Correctional Center, brings the present lawsuit pursuant to 42 U.S.C. §1983 alleging violation of his Eighth Amendment right against cruel and unusual punishment. The matter comes before this Court for merit review under 28 U.S.C. §1915A. In reviewing the complaint, the Court takes all factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. U.S.*, 721 F.3d 418, 422 (7th Cir. 2013) (internal citations omitted).

## ALLEGATIONS

Plaintiff was, at all relevant times, incarcerated at Pontiac Correctional Center ("Pontiac") located in Pontiac, Illinois. Defendants were employed at Pontiac in the following capacities: Defendant Melvin was the warden; Defendant Prentice was a correctional major; Defendant Meister was a correctional sergeant; Defendant Tilden was the medical director; Defendants Jade and Tracey were nurses; and, Defendant Chrissie was a medical techinician.

Plaintiff alleges the showers at Pontiac contained insects, mildew, lime soaps ("soap scum"), trash, human saliva, urine, and excrement. In addition, he alleges the showers did not drain properly because the drains were covered with blankets and replete with hair and debris. (Doc. 1 at 27-29). Plaintiff alleges the showers were seldom, if ever, cleaned between 2015 and 2017, despite Pontiac's policy requiring both the use of bleach solution to clean all high-traffic areas and the availability of spray bottles with the bleach solution to clean showers between uses. (Doc. 1 at 10, 29).

Plaintiff alleges that prisoners, on multiple occasions, brought their sanitation concerns to the attention of prison officials to no avail. (Doc. 1 at 24-25, 27, 30-31). Plaintiff alleges that when he and other prisoners requested spray bottles to clean the showers themselves, prison officials told them that there were none or to file a grievance. (Doc. 1 at 6, 24). Plaintiff also filed grievances about the conditions, but the process yielded no results.

Plaintiff alleges he developed fungal infections on his feet and groin, blackened toenails, and dry feet as a result of the alleged shower conditions.[1] When he sought medical treatment in December 2016, Plaintiff alleges Defendant Jade prescribed tolnaftate powder, an anti-fungal medication.[2] Plaintiff applied the medication to no avail. Plaintiff alleges Defendant Tracey then prescribed tolnaftate cream; the results were the same.

On February 21, 2017, Plaintiff alleges Defendant Chrissy referred him to Defendant Tilden. Plaintiff alleges Defendant Tilden prescribed him tolnaftate cream for three months and

---

[1] The fungal infections on Plaintiff's feet and groin are more commonly known as "athlete's foot" and "jock itch," respectively. *See Mayo Clinic*, "Athlete's foot," http://www.mayoclinic.org/diseases-conditions/athletes-foot/home/ovc-20235864 (last visited July 19, 2017); *Mayo Clinic*, "Jock itch," http://www.mayoclinic.org/diseases-conditions/jock-itch/home/ovc-20229519 (last visited July 19, 2017).

[2] "Tolnaftate belongs to the group of medicines called antifungals. It is used to treat some types of fungus infections. It may also be used together with medicines taken by mouth for fungus infections." *Mayo Clinic*, "Tolnaftate (Topical Route)," http://www.mayoclinic.org/drugs-supplements/tolnaftate-topical-route/description/drg-20068886 (last visited July 19, 2017).

informed Plaintiff that he should have been prescribed the same regimen initially. Plaintiff alleges he received his tolnaftate prescription monthly—but only enough to last a week.

## ANALYSIS

> The Eighth Amendment, applicable to the states through the Due Process Clause of the Fourteenth Amendment, protects prisoners from prison conditions that cause 'the wanton and unnecessary infliction of pain,' *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), including both hazardous prison conditions, *see Farmer v. Brennan*, 411 U.S. 825, 832 (1994), and grossly inadequate medical care, *see Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976).

*Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (internal citations and quotations omitted). Plaintiff alleges hazardous prison conditions and inadequate medical care against certain Pontiac staff.

### I.     Hazardous Conditions of Confinement

Plaintiff alleges that Defendants Melvin, Prentice, and Meister violated his Eighth Amendment rights by ignoring the filthy condition of Pontiac's showers, or otherwise allowing the conditions to persist. To implicate a violation of the Eighth Amendment for hazardous conditions of confinement, a plaintiff must allege that the prison officials "deliberately ignored a prison condition that presented an objectively, sufficiently serious risk of harm." *Id.* at 409 (citing *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008)). That is, the official must "know of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Plaintiff's allegation that the showers contained human excrement and urine for approximately two years allows for a plausible inference that he was subjected to an objectively serious risk of harm. *See Morris v. Ley*, 331 F. App'x 417, 420 (7th Cir. 2009); *Norfleet v. Stroger*, 297 F. App'x 538, 540 (7th Cir. 2008); *see also DeSpain v. Uphoff*, 264 F.3d 965, 974

3

(10th Cir. 2001) ("Exposure to human waste…evokes both the health concerns emphasized in *Farmer*, and the more general standards of dignity embodied in the Eighth Amendment.").

Plaintiff alleges that Defendant Melvin knew about and "turned a blind eye" to the showers' condition, and that Defendants Prentice and Meister "ignored" the shower conditions. (Doc. 1 at 8). Plaintiff's allegations that Defendant Melvin knew of the shower conditions via inspection and prisoners' grievances, and responded with no ameliorative efforts sufficiently state a constitutional claim. *See Pyles*, 771 F.3d at 410; *Perez v. Fenoglio*, 792 F.3d 768, 782 (7th Cir. 2015). Plaintiff's allegations that Defendants Prentice and Meister ignored the showers' condition are also sufficient, even if these defendants were not directly involved with the alleged deprivation. *See Rasho v. Elyea*, 856 F.3d 469, 476 (7th Cir. 2017); *Pyles*, 771 F.3d at 410.

## II.    Inadequate Medical Care

Plaintiff alleges that Defendants Tilden, Jade, Tracey, and Chrissy violated his Eighth Amendment right by failing to provide adequate medical care. To implicate a violation of the Eighth Amendment for inadequate medical care, the plaintiff must allege that the prison official acted with deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). "A medical condition is objectively serious if a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles*, 771 F.3d at 409 (citing *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009)).

The Court can reasonably infer from the diagnosis and treatment of Plaintiff's fungal infections that medical staff at Pontiac thought the conditions warranted treatment. Moreover, the Court cannot foreclose the possibility that Plaintiff's infections were so severe that a layperson would see a need for treatment. Ultimately, Plaintiff may not be able to show that he suffered from an objectively serious medical need, *see Roberts v. Dawalibi*, No. 14 C 4719, 2017 WL

4

926772, at *5-6 (N.D. Ill. Mar. 8, 2017) (finding that some fungal infections, including typical-symptom athlete's foot and jock itch, did not constitute sufficiently serious medical needs), but that determination should be made upon a more developed record. At this stage, Plaintiff's allegations that he developed fungal infections in his foot and groin plausibly allege objectively serious medical needs. *See Pyles*, 771 F.3d at 409; *King*, 680 F.3d at 1018.

The plaintiff must also allege that prison medical staff was deliberately indifferent. Treatment decisions made by medical professionals are entitled to deference, *Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016), and to constitute deliberate indifference the decision must be "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on sound judgment." *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (en banc), *cert*. *denied*, 137 S. Ct. 1578 (2017) (internal quotations omitted) (citations omitted). This may be demonstrated through evidence showing, among other things, persistence in course of treatment known to be ineffective, inexplicable delay of treatment that serves no penological interest, and choice of an "easier and less efficacious treatment without exercising professional judgment." *Petties*, 836 F.3d at 729-30 (quoting *Estelle*, 429 U.S. at 104 n.10) (citing *Conley v. Birch*, 796 F.3d 742, 747 (7th Cir. 2015)) (internal quotations omitted). But showing mere negligence or malpractice is not enough. *Pyles*, 771 F.3d at 409 (citing *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008)); *see Petties*, 836 F.3d at 728.

Liberally construed, Plaintiff's allegations suggest that the Defendants failed to provide treatment sufficient to remedy his condition, persisted in a treatment known to be ineffective, or chose an easier and less efficacious treatment for reasons not related to the sound exercise of medical discretion. Therefore, the Court finds that Plaintiff sufficiently alleges facts supporting

claims of inadequate medical care under the Eighth Amendment against Defendants Jade, Tracey, Chrissie, and Tilden.

**IT IS THEREFORE ORDERED:**

1) **Pursuant to its merit review of the complaint under 28 U.S.C. § 1915A, the Court finds the Plaintiff states an Eighth Amendment claim for inhumane conditions of confinement against Defendants Melvin, Prentice, and Meister and an Eighth Amendment claim for deliberate indifference to a serious medical need against Defendants Jade, Tracey, Chrissy, and Tilden. The remaining defendants shall be dismissed. Any additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or pursuant to Federal Rule of Civil Procedure 15.**

2) **This case is now in the process of service. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, in order to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless otherwise directed by the Court.**

3) **The Court will attempt service on Defendants by mailing each Defendant a waiver of service. Defendants have 60 days from service to file an Answer. If Defendants have not filed Answers or appeared through counsel within 90 days of the entry of this order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.**

4) **With respect to a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall provide to the Clerk said Defendant's current work address, or, if not known, said Defendant's forwarding address. This information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.**

5) **Defendants shall file an answer within 60 days of the date the waiver is sent by the Clerk. A motion to dismiss is not an answer. The answer should include all defenses appropriate under the Federal Rules. The answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth Defendants' positions. The Court does not rule on the merits of those positions unless and until a motion is filed by Defendants. Therefore, no response to the answer is necessary or will be considered.**

6

6) **Once counsel has appeared for a Defendant, Plaintiff need not send copies of his filings to that Defendant or to that Defendant's counsel. Instead, the Clerk will file Plaintiff's document electronically and send a notice of electronic filing to defense counsel. The notice of electronic filing shall constitute service on Defendants pursuant to Local Rule 5.3. If electronic service on Defendants is not available, Plaintiff will be notified and instructed accordingly.**

7) **Counsel for Defendants is hereby granted leave to depose Plaintiff at his place of confinement. Counsel for Defendants shall arrange the time for the deposition.**

8) **Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to notify the Court of a change in mailing address or phone number will result in dismissal of this lawsuit, with prejudice.**

9) **Within 10 days of receiving from Defendants' counsel an authorization to release medical records, Plaintiff is directed to sign and return the authorization to Defendants' Counsel.**

10) **Plaintiff's Motion to Request Counsel [5] is DENIED with leave to renew. Plaintiff has no constitutional or statutory right to counsel in this case. In considering the Plaintiff's motion, the court asks: (1) has the indigent Plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself? Pruitt v. Mote, 503 F.3d 647, 654-55 (7th Cir. 2007), citing Farmer v. Haas, 990 F.2d 319, 322 (7th Cir.1993). Plaintiff has not shown that he made a reasonable effort to obtain counsel on his own. A plaintiff usually does this by attaching copies of letters sent to attorneys seeking representation and copies of any responses received. Because Plaintiff has not satisfied the first prong, the Court does not address the second.**

11) **Plaintiff's Motion Requesting the Court to Direct the Defendant's Agency to Comply [6] is DENIED. Per the Court's Text Order entered June 12, 2017, officials at Plaintiff's place of incarceration are required to send 20 percent of preceding month's income credited to Plaintiff's account to the Clerk until the filing fee is paid in full. According to the CDIL Finance Department, the Court has only received $0.02 from Plaintiff towards his initial filing fee. The exhibit Plaintiff provided suggests that officials at his place of incarceration have restricted the availability of funds credited to Plaintiff's account in July 2017 to ensure that the funds are available to send to the Clerk in compliance with the Court's Order.**

**IT IS FURTHER ORDERED THAT THE CLERK IS DIRECTED TO:**

1) **Attempt service on Defendants pursuant to the standard procedures;**

   2) **Set an internal court deadline 60 days from the entry of this order for the court to check on the status of service and enter scheduling deadlines; and,**

   3) **Enter the Court's standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.**

   **Lastly, it is ordered that if a Defendant fails to sign and return a waiver of service for the clerk within 30 days after the waiver is sent, the court will take appropriate steps to effect formal service through the U.S. Marshal's Service on that Defendant and will require that Defendant to pay the full costs of formal service pursuant to Federal Rule of Civil Procedure 4(d)(2).**

ENTERED this 26th day of July, 2017.

          *s/Sara Darrow*
          SARA DARROW
          UNITED STATES DISTRICT JUDGE