UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| BRYAIN J. YOUNG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 17-1269 |
| | ) | |
| MICHAEL MELVIN, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## SUMMARY JUDGMENT ORDER

Plaintiff, proceeding pro se and presently incarcerated at Pontiac Correctional Center, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging deliberate indifference to a serious medical need and inhumane conditions of confinement.[1]  The matter comes before this Court for ruling on the Motion for Summary Judgment filed by Defendants Tilden, Kjellesvik, and Drilling.  (Doc. 77). The motion is granted.

## PRELIMINARY MATTERS

### Plaintiff's Motion to Add Information (Doc. 92) and Plaintiff's Motion Challenging the Admissibility of Declaration (Doc. 100)

Plaintiff's Motion to Add Information (Doc. 92) seeks to supplement his response to Defendants' motion for summary judgment with information he believes disqualifies Riliwan Ojelade as a witness in this case.  Plaintiff's Motion Challenging the Admissibility of Declaration (Doc. 100) expounds on the statements made in his Motion to Add Information and asks the Court not to consider Ojelade's declaration submitted in support of Defendants' motion

---

[1] Plaintiff asserted a conditions-of-confinement claim against Defendants Melvin, Prentice, and Meister.  These defendants, along with Defendant Eschleman, have filed a motion requesting additional time to file a dispositive motion in this case.  The motion is discussed below.

for summary judgment.  Because the motions appear to seek the same relief, the Court will address them together.

Riliwan Ojelade ("PA Ojelade") is a physician's assistant employed at Pontiac Correctional Center ("Pontiac").  He is not a defendant in this matter.  As discussed below, PA Ojelade treated Plaintiff after the involvement of Defendants Tilden, Drilling, and Kjellesvik had ended.  PA's Ojelade's declaration summarizes the care Plaintiff received based on a review of the medical records and his personal knowledge of the treatment he provided.  The declaration also provides general information about the medical conditions relevant here.

Plaintiff argues that PA Ojelade's declaration violates Rule 56(c)(4) of the Federal Rules of Civil Procedure.  The rule provides: "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matter stated."  Fed. R. Civ. P. 56(c)(4).  Specifically, Plaintiff points out that PA Ojelade is not a podiatrist and argues that PA Ojelade fails to provide his educational background, the basis of his medical knowledge, or his experience treating athlete's foot and jock itch.

PA Ojelade has personal knowledge of the treatment he provided Plaintiff, the medical records are admissible under Fed. R. Evid. 803(6), and PA Ojelade's employment as a physician's assistant qualifies him to testify about common skin infections and rashes.  *See generally* Mayo Clinic, Physician Assistant, available at: https://college.mayo.edu/academics/explore-health-care-careers/careers-a-z/physician-assistant/?_ga=2.44235296.503777321.1551889294-1372963375.1540328082 (last accessed Mar. 6, 2019) (physician's assistant's "work with patients of all ages in virtually all specialty and

primary care areas, diagnosing and treating common illnesses and working with minor procedures.").[2]  Accordingly, Plaintiff's motions are denied.

### Plaintiff's Motion to Respond to Defendants' Reply (Doc. 101)

Plaintiff seeks to file a sur-reply with respect to Defendants' motion for summary judgment.  Defendants did not respond to Plaintiff's motion, and, therefore, the motion is granted.  The Court will consider Plaintiff's arguments in ruling on Defendants' motion for summary judgment.

### Plaintiff's Motion to Compel (Doc. 122)

Plaintiff filed a motion stating that Defendants Kjellevik and Drilling failed to provide detailed information regarding their educational background (i.e. the names of classes they completed) and copies of several Wexford policies.  According to the responses to interrogatories Plaintiff attached to his motion, Defendants Kjellesvik and Drilling indicated that they are registered nurses licensed in the State of Illinois and that they completed all mandatory coursework to obtain said licenses.  Additional information regarding specific coursework they completed is not relevant to these proceedings.

As to the policies, Defendants indicate in their response and in a certificate of service that the Wexford policies in question were provided to Plaintiff in a supplemental discovery response.  *See* (Docs. 121, 123).  Plaintiff's motion is denied.

### LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  All facts must be construed in the light most favorable to the non-moving party,

---

[2] For authority for searching the internet for information, see *Rowe v. Gibson*, 798 F.3d 622 (7th Cir. 2015).

and all reasonable inferences must be drawn in his favor.  *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010).  The party moving for summary judgment must show the lack of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## FACTS

Plaintiff was incarcerated at Pontiac.  Defendants were employed at the facility in the following capacities:  Defendant Tilden was a physician; and, Defendants Drilling[3] and Kjellesvik were nurses.

The medical records provided to the Court show that Plaintiff was examined for complaints of athlete's foot or jock itch or both approximately seven (7) times between December 2016 and May 2018.  Athlete's foot (tinea pedis) and jock itch (tinea cruris) are fungal infections in a person's feet and groin area, respectively.  Symptoms include red, itchy, burning or irritated skin or a rash that may persist anywhere between a few weeks to a few years.  (Doc. 91 at 39, 41); Ojelade Decl. ¶ 9 (Doc. 79-6 at 2) ("tinea pedis may last one week or as long as several years).  The conditions are common, not life-threatening, and treated through application of an antifungal ointment, cream, or spray to the affected areas.  Patients with symptoms that do not resolve with this type of treatment may require oral medication (pills).  Unless there is increased swelling, bleeding, or a severe bacterial infection develops from broken skin, the conditions are generally not considered serious.  Ojelade Decl. ¶ 8.

---

[3] Defendant Jade Drilling is also referred to in the record as Jade Culkin.

Defendant Drilling examined Plaintiff on December 19, 2016 for complaints of itching on his feet. For common medical conditions, nurses at the prison follow the instructions on a form that corresponds to the appropriate condition. Defendant Drilling documented her observations of Plaintiff's feet on a form for athlete's foot/jock itch, noting that Plaintiff had dry, flaky skin between his toes and on the bottom of his feet. (Doc. 79-1 at 7-8). She did not indicate the presence of open sores, or other signs of a bacterial infection. Defendant Drilling prescribed tolnaftate powder for two weeks per the form's instructions. Tolnaftate is an antifungal medication commonly found in over-the-counter medications used to treat athlete's foot. *See* Mayo Clinic, Tolnaftate (Topical Route), http://www.mayoclinic.org/drugs-supplements/tolnaftate-topical-route/description/drg-20068886 (last visited Mar. 7, 2019); *see also* Tinactin, Drug Facts, available at: http://labeling.bayercare.com/omr/online/Tinactin_Deodorant_Powder_Spray_drugfacts.pdf (last accessed Mar. 7, 2019).

Plaintiff returned to sick call on January 10, 2017 with the same complaints and reported that the powder did not work. *Id.* at 9-10. Defendant Kjellesvik noted on the appropriate form that Plaintiff complained of itching, but she did not indicate that Plaintiff showed signs of open sores or other signs of infections. *Id.* Per the instructions on the form, Defendant Kjellesvik prescribed tolnaftate cream for two weeks and instructed Plaintiff to use the cream sparingly. *Id.* Defendant Kjellesvik also instructed Plaintiff to keep his feet clean and dry, wear loose-fitting clothing and clean socks daily, and to wear shower shoes. *Id.*

On February 21, 2017, Plaintiff reported to a nurse that the tolnaftate cream did not work. *Id.* at 12. On March 5, 2017, Defendant Tilden diagnosed Plaintiff with jock itch and prescribed Plaintiff tolnaftate cream, twice a day, for three months. *Id.* at 13. Approximately two-and-one-half weeks later, Plaintiff told medical staff that he had run out of cream and needed more. The

nurse informed Plaintiff that he could only get one tube of cream per month and that he should use the cream sparingly. *Id.* at 15.

Plaintiff reported to a nurse on June 14, 2017 that he had run out of cream and that it did not work. (Doc. 79-2 at 1). Plaintiff reiterated that the cream did not work to PA Ojelade during an examination the next day. *Id.* PA Ojelade prescribed miconazole, twice a day, for three months. Miconazole is another type of antifungal medication used to treat the type of fungi that causes athlete's foot and jock itch. *See* (Doc. 91 at 31) ("Miconazole eases the symptoms of skin infections [caused by the tinea group of fungi] by killing the fungi causing the infection."). Plaintiff requested a refill of the miconazole cream on July 30, 2017, but medical staff informed him he was not due for a refill until August 17, 2017 and instructed Plaintiff to request more at that time. (Doc. 79-2 at 4).

Two months later, on September 20, 2017, Plaintiff again reported to medical staff that the powder and cream did not work. Nurse Practitioner Cheryl Hansen ("Nurse Hansen") diagnosed Plaintiff with a tinea infection and prescribed Diflucan (also known as fluconazole), twice a day, for two weeks. Diflucan is an oral medication used to prevent and treat tinea infections. Ojelade Decl. ¶ 34 (Doc. 79-6 at 4).

Plaintiff returned to nurse sick call on November 20, 2017, with complaints of jock itch and athlete's foot in his groin and between his toes, respectively. (Doc. 79-2 at 12). The nurse did not observe any cracking or open wounds on Plaintiff's feet. *Id.* On November 27, 2017, Nurse Hansen diagnosed Plaintiff with jock itch and renewed Plaintiff's prescription for Diflucan/fluconazole for four (4) weeks. *Id.* at 14.

PA Ojelade examined Plaintiff on January 13, 2018. *Id.* at 16. He diagnosed Plaintiff with genital eczema and instructed Plaintiff to improve his hygiene. *Id.* PA Ojelade also

prescribed triamcinolone, a steroid cream, twice a day, for three months.  *Id.*  According to a previous motion Plaintiff filed, the triamcinolone cream provided some relief.  *See* (Doc. 62 at 10, ¶ 14) (cream prescribed January 13, 2018 was working).

Plaintiff returned to sick call with complaints of athlete's foot on March 22, 2018.  (Doc. 79-2 at 18).  Staff observed no signs of infection on Plaintiff's feet and prescribed tolnaftate creams for 2 weeks.  *Id.*  According to PA Ojelade, pictures of Plaintiff's feet taken May 15, 2018, show only a mild tinea infection.  Ojelade Decl. ¶ 47.

## ANALYSIS

Inmates are entitled to adequate medical care under the Eighth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976).  To prevail, a plaintiff must show that the prison official acted with deliberate indifference to a serious medical need.  *Id.* at 105.  Claims of negligence, medical malpractice, or disagreement with a prescribed course of treatment are not sufficient.  *See Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016) (en banc); *McDonald v. Hardy*, 821 F.3d 882, 888 (7th Cir. 2016).

"An objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (internal quotations omitted).  A medical condition may also be objectively serious if "failure to treat it could result in further significant injury or the unnecessary and wanton infliction of pain."  *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008).

Athlete's foot and jock itch are not life-threatening conditions, nor are they conditions for which a person would ordinarily seek a doctor's help.  Courts that have addressed the issue of whether these conditions are sufficiently serious to warrant constitutional concerns have

overwhelmingly found that they are not, even if the symptoms include constant itching, burning, dry skin, and discomfort. *See Roberts v. Dawalibi*, 2017 WL 926772, at *5 (N.D. Ill., filed Mar. 8, 2017) (collecting cases).

Here, medical staff did not observe any signs of infection, nor did they observe cracking skin or open wounds. The symptoms Plaintiff reported, and the lack of any indicia suggesting a more serious condition, suggest only that Plaintiff suffered from relatively common fungal infections on his feet and groin. Insofar as it is relevant here, Plaintiff did not suffer from these symptoms for a duration greater than that usually attendant to these conditions. The fact that these conditions did not resolve as quickly as Plaintiff may have wanted does not support an inference that his condition was objectively serious. Accordingly, the Court finds that no reasonable juror could conclude that Plaintiff's athlete's foot and jock itch were objectively serious medical conditions.

Even if Plaintiff could show that he suffered from an objectively serious condition, he cannot show that Defendants Tilden, Kjellesvik, and Drilling acted with deliberate indifference. Liability attaches when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official's subjective awareness of a risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842.

Plaintiff's access to medical treatment is not at issue; the medical records indicate that the only times Plaintiff was not examined when scheduled were in situations where he refused

examination, was at church, or a prison-wide lockdown prohibited movement throughout the facility.  (Doc. 79-1 at 11, 16); (Doc. 79-2 at 5).  If Plaintiff was denied access to medical treatment at any time, the record does not support an inference that any denial was attributable to these defendants.

Where access to medical care is not at issue, treatment providers are entitled to deference. *Zaya v. Sood*, 836 F.3d 800, 805 (7th Cir. 2016).  To constitute deliberate indifference, a treatment decision must be "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment."  *Petties*, 836 F.3d at 729 (internal quotations omitted).  In other words, a medical professional is deliberately indifferent only if "'no minimally competent professional would have so responded under those circumstances.'"  *Sain v. Wood*, 512 F.3d 886, 894-95 (7th Cir. 2008) (quoting *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 988 (7th Cir. 1998)).

Several circumstances could lead to an inference that a medical professional failed to exercise the appropriate judgment.  These include: persisting in a course of treatment known to be ineffective; failure to follow an existing protocol; inexplicable delays in treatment without penological justification; and, refusal to follow a specialist's recommendations.  *Petties*, 836 F.3d at 729-30.

Defendants Tilden, Kjellesvik, and Drilling followed the protocols in place for treatment of the conditions Plaintiff presented and modified Plaintiff's prescriptions in dosage or type of medication when Plaintiff reported that previous medications had not worked.  *See Proctor v. Sood*, 863 F.3d 563, 568 (7th Cir. 2017) (no deliberate indifference where physicians altered the course of treatment in response to prisoner's complaints).  The treatment these Defendants

provided was also consistent with the treatment recommended in the medical literature Plaintiff provided. *See* (Doc. 91 at 39, 41) (recommending topical antifungal treatments for both tinea cruris and tinea pedis); *id.* at 35-36 (tolnaftate cream "[c]ures most athlete's foot (tinea pedis), jock itch (tinea cruris), and ringworm (tinea corporis).").

The extent to which Plaintiff's prescriptions were ineffective is not clear in the record. According to the medical records, Plaintiff requested additional medicated cream on at least two occasions while prescriptions for those medications were still active, but once any prescription lapsed, Plaintiff then reported that the medications did not work. Plaintiff's requests support only the inference that the medicated creams provided at least some relief because, the Court assumes, Plaintiff would not have requested more of a medication that did nothing for him.

Regardless, the fact that these conditions may have persisted or recurred after these Defendants provided treatment does not support an inference that they consciously disregarded any risk of serious harm Plaintiff faced—the medical literature Plaintiff provided states that both conditions are common, chronic, and may recur even with treatment. (Doc. 91 at 39) ("Tinea cruris usually responds to topical or systemic treatment but often recurs."); *id.* at 41 ("For many individuals, tinea pedis is a chronic affliction, temporarily cleared by therapy only to recur.").

Defendants Tilden, Drilling, and Kjellesvik treated Plaintiff relatively early in the progression of his symptoms for both conditions and, in the absence of evidence suggesting that the treatment they provided would have been ineffective, the record does not disclose anything else they could have or should have done. Plaintiff's medical records did not disclose a prior history of these conditions or facts that suggested a need for specialized treatment. Nothing in the record suggests that the treatment decisions the Defendants made were blatantly inappropriate or based on factors outside the bounds of accepted medical judgment. At best,

Plaintiff could show that he disagreed with the course of treatment provided or that he desired specific treatment he was not provided. Neither is sufficient to impose constitutional liability. *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996).

On a final note, the treatment PA Ojelade and Nurse Hanson provided thereafter also does not suggest that medical staff acted with deliberate indifference as both continued to progress through the available medications in an attempt to find one that resolved Plaintiff's issues. Plaintiff requested additional miconazole cream when he ran out, suggesting again that it provided some relief, only to state that it was not effective once the prescription lapsed. When that happened, Nurse Hanson prescribed oral medication to address the issues. Once PA Ojelade diagnosed Plaintiff with genital eczema, Plaintiff reported that the triamcinolone cream he was prescribed provided some relief.

Accordingly, for the reasons stated above, the Court finds that no reasonable juror could conclude that Defendants Tilden, Kjellesvik, and Drilling acted with deliberate indifference. Defendants' motion for summary judgment is granted.

**Other Pending Motions**

Plaintiff filed a Motion to Compel (Doc. 118) stating that Defendants Melvin, Prentice, Meister, and Eshlemen failed to produce work orders and logs "pertaining to the issuance of cleaning supplies and chemicals" as directed by the Court's Text Order entered August 3, 2018. *Id.* Defendants indicate in their response that they have provided all documents available that are responsive to Plaintiff's discovery requests. (Doc. 119). According to the Certificate of Compliance Defendants filed with the Court, Defendants have provided relevant memos, grievances, and cleaning supply logs. (Doc. 107). Plaintiff's motion is therefore denied.

Defendants Melvin, Prentice, Meister, and Eshlemen filed a Motion for Extension of Time (Doc. 120) seeking additional time to file a dispositive motion. The motion is granted. New deadlines are set forth below.

**IT IS THEREFORE ORDERED:**

1) **Plaintiff's Motion to Respond [101] is GRANTED.**

2) **Plaintiff's Motions [92][100][118][122] are DENIED for the reasons stated above.**

3) **Defendants' Motion for Summary Judgment [77] is GRANTED. Defendants Tilden, Kjellesvik, and Drilling are dismissed with prejudice. Clerk is directed to terminate these defendants.**

4) **Defendants' Motion for Extension of Time [120] is GRANTED. Dispositive motions shall be filed by April 19, 2019.**

Entered this 12th day of March, 2019.

                         *s/Colin S. Bruce*
                    COLIN S. BRUCE
          UNITED STATES DISTRICT JUDGE